**Brenda Lee MAREK and Robert Alan Marek, Administrators of the Estate of Amanda K. Marek, Deceased, Appellants,**

v.

**Edward C. KETYER, M.D., and Arnold M. Steinman, M.D., Joel Safier, M.D., Judith Giga, M.D., Associates, a corporation, Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 26, 1999.

Filed May 18, 1999.

Reargument Denied July 21, 1999.

Craig L. Fishman, Pittsburgh, for appellants.

James A. Wood, Pittsburgh, for appelles.

Before DEL SOLE, ORIE MELVIN and TAMILIA, JJ.

DEL SOLE, J.:

¶ 1 This appeal follows a defense verdict in a medical malpractice case in which Appellants alleged that Appellees failed to timely diagnose and treat their infant daughter's congenital heart condition which led to her death. Upon review we find it necessary to award a new trial based upon Appellants' claim that Dr. Beerman, a treating physician, communicated with defense counsel *ex parte* and testified as a defense expert on liability without Appellants' consent in violation of Pa.R.C.P. 4003.6.

¶ 2 Pennsylvania Rule of Civil Procedure 4003.6 provides that "[i]nformation may be obtained from the treating physician of a party only upon written consent of that party or through a method of discovery authorized by this chapter." The questions in this case concern whether Dr. Beerman was a "treating physician" and whether his testimony which was limited to his opinion based on the medical records and depositions in the case, without comment on his care of the child, was violative of the rule.

¶ 3 Appellant's daughter was seen in the weeks following her birth by Appellee, Dr. Ketyer. Dr. Ketyer eventually referred the child to Children's Hospital of Pittsburgh for testing and treatment. An echocardiogram was taken and reviewed by Dr. Beerman. He was a member of a cardiology team that was treating the child and he communicated his impressions about the results of that test and the information it provided to other members of the team. The team confirmed the existence of a heart defect and performed surgery to correct the defect, but unfortunately, due to the infant's weakened condition, she died the following day.

¶ 4 Appellees contend that Dr. Beerman was "no more than an impersonal reader of the echocardiogram." Because of this limited contact and the fact that he never spoke with the parents and never recommended any medication or therapy, Appellees argue he should not be considered the child's treating physician. De-spite the trial court's ultimate ruling in Appellees' favor, it did not accept their position that Dr. Beerman was not a treating physician, and neither do we. As noted by the trial court, Dr. Beerman reviewed the infant's echocardiogram and communicated with members of the team about its result and the child's care. He billed Appellants for his service and was paid. Dr. Beerman rendered his services in the treatment of this child in an effort to see to her recovery. He must be considered a treating physician.

¶ 5 We turn now to the question of whether Dr. Beerman, as a treating physician, violated Pa.R.C.P. 4003.6 when he communicated with defense counsel *ex parte*, drafted letters in response to defense counsel's request for his impressions of the case, and testified at trial. Prior to trial, Appellants presented the court with a motion *in limine* seeking to prevent Dr. Beerman from offering any testimony on Appellees' behalf. The court entered an order permitting Dr. Beerman to testify but prohibiting him from mentioning to the jury that he participated in the child's care while she was at the hospital. The trial court found that the Rule was not violated in this instance since it was designed to prevent a treating physician from disclosing confidential information received from a patient, and this doctor was prohibited from offering any testimony about the child's treatment. The court reasoned that by limiting Dr. Beerman's testimony to his opinion as to whether Dr. Ketyer's treatment met the appropriate standard of medical care based on medical record and depositions in the case, he was effectively prevented from dispensing confidential information.

¶ 6 The fault with this analysis is that the Rule does not limit a treating physician from disclosing only that information learned in confidence. Rather, it prohibits a treating physician from providing the opposing party with any information without written consent of the patient. The Rule recognizes that an authorized method

of discovery could be employed to gain information from a treating physician, but absent such a procedure or absent consent, the treating physician is not to provide any information.

¶ 7 Courts have recognized the value of a rule prohibiting *ex parte* communications between treating physicians and patients' opposing counsel. Among the concerns prompting the development of rules, regulations and legislative enactments is the recognized privacy interest underlying the physician-patient relationship and the physician's duty of loyalty to the patient. Daniel Jones, Annotation, *Discovery: Right to Ex Parte Interview with Injured Party's Treating Physician,* 50 A.L.R. 4th 714 (1996). During an *ex parte* communication inquiry may be made about the patient's mental or physical health or history which may not be relevant to the action. Also of concern is the potential tort liability physicians may face for breach of privacy, as well as the potential that defense counsel may seek to improperly influence the physician or to dissuade the doctor from testifying. *Id.*

¶ 8 Even prior to promulgation of Rule 4003.6, Pennsylvania's policy of protecting the confidential nature of physician-patient relationships was recognized in *Manion v. N.P.W. Medical Center, Inc.*, 676 F.Supp. 585 (M.D.Pa.1987) Therein defense counsel, without prior notice to plaintiff or his counsel, interviewed plaintiff's former treating physician *ex parte*. The court noted in such situations there are no safeguards against revelation of matters irrelevant to the lawsuit and personally damaging to the patient. It further remarked that potential for breaches in confidentiality between a patient and the physician could have a chilling effect on the patient-physician relationship. Thus, the court granted a motion *in limine* forbidding further unauthorized *ex parte* contacts and ruled that defense counsel was precluded from calling plaintiff's treating physicians as expert witnesses at trial.

¶ 9 Appellees contend that Appellants waived the physician-patient privilege when they filed this action and by doing so they implicitly consented to disclosures by their physicians concerning medical matters. *Moses v. McWilliams,* 379 Pa.Super. 150, 549 A.2d 950 (1988). The physician-patient privilege protects certain information from being disclosed and courts have held that a plaintiff waives this privilege by the filing of a lawsuit. *Id.* However, although the statutory physician-patient privilege was waived by the filing of the lawsuit, this waiver does not permit unfettered disclosure. Rule 4003.6 regulates the manner in which defense counsel obtains information from the plaintiff's treating physician. Regulating the contacts between a treating physician and defense counsel "affects defense counsel's methods, not the substance of what is discoverable." *Manion v. N.P.W. Medical Center, supra,* at 593.

¶ 10 Rule 4003.6 is clear in its directive. Only upon consent or through a method of authorized discovery may information be obtained from a party's treating physician. These procedures protect both the patient and the physician by ensuring that adverse counsel will not abuse the opportunity to contact or interrogate the physician privately. When formal discovery is undertaken in the presence of a patient's counsel it can be assured that irrelevant medical testimony will not be elicited and confidences will not be breached, preserving the trust which exists between doctor and patient.

¶ 11 Because it is evident that the Rule was violated in this case when, without consent, Dr. Beerman communicated *ex parte* with defense counsel and then testified as a defense expert at trial, Appellants must be awarded a new trial.[1]

---

1. Because of this ruling requiring the grant of a new trial, we decline to address Appellants' remaining claims of trial error.

¶ 12 Judgment vacated. Case remanded. Jurisdiction relinquished.