[No. 18372-6-III.   Division Three.   April 11, 2000.]

WILLIAM B. ROWE, ET AL., *Respondents*, v. VAAGEN BROTHERS LUMBER, INC., *Appellant*.

*Amy Christina Clemmons* of *Evans, Craven & Lackie, P.S.*, for appellant.

*Ross P. White* and *Richard L. Mount* of *Layman, Loft, Arpin & White*, for respondents.

SWEENEY, J. — In this wrongful termination claim, a jury found Vaagen Brothers Lumber, Inc., not liable for retaliatory discharge or breach of contract. The trial judge granted a new trial based largely on the misconduct of defense counsel, including ex parte pretrial interviews with two treating physicians and repeated obstreperous objections during the trial. We conclude that the trial judge did not abuse his considerable discretion and affirm.

## FACTS

William Rowe started working for Vaagen Brothers Lumber, Inc., in 1989. On October 18, 1994, he hurt his neck and back while handling a 20-foot, 2- by 6-inch board.

Mr. Rowe offered explanations for visiting five different doctors over the next few weeks. Vaagen Brothers characterized it as doctor shopping.

First, Mr. Rowe visited Dr. Ronald Frederickson, the only chiropractor he could find who would see him on short notice. He immediately switched to Dr. Dwight Erickson, who was more conveniently located. When Dr. Erickson's treatment failed to produce results, he referred Mr. Rowe to an orthopedist, Dr. Warren Adams. When Dr. Adams could not determine the reason for Mr. Rowe's continuing pain, he referred him to other specialists for neurological tests and an MRI. One of these specialists, Dr. Roger Cooke, referred Mr. Rowe to yet another chiropractor.

Drs. Erickson, Adams and Cooke all wrote orders excusing Mr. Rowe from work. By the first part of January 1995, Mr. Rowe still had not returned to work.

On Friday, December 16, 1994, Dr. Adams told Mr. Rowe that he was releasing him for light duty starting the following Monday, but that Mr. Rowe should visit Dr. Cooke again for an unrelated condition. Mr. Rowe testified Dr. Adams

never gave him a release slip. He went to Dr. Cooke, who recommended physical therapy.

That weekend, Mr. Rowe aggravated his injury shoveling snow. He returned to Dr. Cooke on Monday, December 19. Dr. Cooke signed him off work for another two weeks. He ordered a physical therapy regimen and told Mr. Rowe to return with the therapist's final report.

Mr. Rowe took the note to Vaagen Brothers, but instead of leaving it with a supervisor, he left it with an employee in the parking lot. Mr. Rowe testified no supervisor was available. Vaagen Brothers claimed the supervisor was in his office.

The therapy was not successful. After the last session on January 3, 1995, the therapist told Mr. Rowe to pick up the report on January 4.

Meanwhile, on December 30, 1994, Alexsis Risk Management, Vaagen Brothers' workers' compensation administrator, learned that Dr. Adams had released Mr. Rowe for light duty on December 16, and reported that fact to Leon Hayes, Vaagen Brothers' personnel manager.

On January 3, Mr. Hayes called Mr. Rowe at home and told him to report to Vaagen Brothers the next morning. Mr. Rowe testified he told Mr. Hayes he had to deliver the therapist's report to Dr. Cooke. Mr. Hayes understood him to say he had an appointment. He had Alexsis call Dr. Cooke's office which reported that Mr. Rowe did not have any appointment.

Dr. Cooke was out on January 4 when Mr. Rowe delivered the therapy report. However, Dr. Cooke left another referral to a chiropractor, and another written order for two more weeks off work.

On January 5, Mr. Rowe met with Mr. Hayes, who immediately handed him a termination notice. Mr. Hayes refused to listen to any explanations or excuses, and rejected Dr. Cooke's last note. The stated reasons for termination were failure to report for work after being released by Dr. Adams on December 16, and lying about the appointment with Dr. Cooke on January 4.

Mr. Rowe claimed Vaagen Brothers violated its own binding policy manual and discharged him in violation of the no-retribution provisions of the Workers' Compensation Act, Title 51 RCW.

Vaagen Brothers offered evidence that its employees routinely filed Department of Labor and Industries (L&I) claims without retaliation; that Mr. Rowe's disability was entirely subjective and that he switched every time a doctor became suspicious about the lack of objective findings and threatened to return him to work; and that the company's written policy was that three days of unexcused no-show subjected every employee to automatic termination and that Mr. Rowe did not show for three weeks after the release by Dr. Adams.

Mr. Rowe believed that Vaagen Brothers had discriminated against him in violation of Title 51 RCW for filing an L&I claim. He did not seek relief with the Department of Labor and Industries. Instead, he filed actions at common law for breach of contract and the tort of retaliation.

His physicians, Drs. Cooke and Adams, testified by videotaped deposition. Vaagen Brothers' lawyer conducted ex parte interviews with both Dr. Cooke and Dr. Adams before their depositions. During intermittent and contentious argument by counsel, the court ruled on numerous edits for both videos. Defense counsel submitted the edits to the videographer. When the Adams tape was played to the jury, an excluded question and answer remained. The tape was stopped before the jury heard the offending testimony.

At the end of Mr. Rowe's case, Vaagen Brothers moved for a directed verdict on the breach of contract claim. The court denied the motion. The jury returned verdicts for Vaagen Brothers on both the contract and retaliation claims.

Mr. Rowe moved for a new trial. He based the motion on the excessive number of objectionable questions by the defense; the ex parte contact with the doctors; the mistake in editing the Adams deposition; and misrepresentation of the evidence in the defense's closing argument.

The trial court entered findings favorable to Mr. Rowe on each point, and concluded that, taken as a whole, the objectionable nature of defense counsel's conduct permeated the trial and prejudiced Mr. Rowe. In a letter opinion, the court explained that its new trial order was based on the cumulative impact of the defects. "If there were only one or two of these instances of meritorious CR 59 bases present, the court's decision on this motion may well have been different."

Vaagen Brothers assigns error to the denial of its motion for directed verdict on the contract claim and new trial order. It contends that Mr. Rowe cannot prevail on either issue as a matter of law, and the court's reasons for setting aside the verdict are insufficient.

## DISCUSSION
### BREACH OF CONTRACT CLAIM

■ We review a ruling on a motion for a directed verdict de novo. *Stiley v. Block*, 130 Wn.2d 486, 504, 925 P.2d 194 (1996); *Wright v. Engum*, 124 Wn.2d 343, 356, 878 P.2d 1198 (1994). A motion for a directed verdict admits the truth of the evidence of the party against whom the motion is made and all inferences that reasonably can be drawn therefrom. *Peterson v. Littlejohn*, 56 Wn. App. 1, 8, 781 P.2d 1329 (1989); *Roberts v. Atlantic Richfield Co.*, 88 Wn.2d 887, 890, 568 P.2d 764 (1977). We look, therefore, only at Mr. Rowe's evidence. *Id.* A directed verdict is proper if, so viewed, there is no substantial evidence or reasonable inference that would sustain a jury verdict for Mr. Rowe. *Oliver v. Pacific N.W. Bell Tel. Co.*, 106 Wn.2d 675, 678, 724 P.2d 1003 (1986).

■ ■ *Employee Handbook.* Generally, absent a contract for employment of definite duration, an employer has the right to discharge an employee with or without cause. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 223, 685 P.2d 1081 (1984). But employment will be terminable only for just cause if promises in an employee handbook create an actual or implied contract. *Id.* (citing *Roberts*, 88 Wn.2d at 894).

■ A true contract is created if, in exchange for the handbook promises, the worker provides consideration in addition to required services. *Roberts*, 88 Wn.2d at 894. A handbook can be offered and accepted as consideration for employees forgoing their legal right to unionize. *Swanson v. Liquid Air Corp.*, 118 Wn.2d 512, 524, 826 P.2d 664 (1992). Whether additional consideration supports an actual contract is a question of fact. *Thompson*, 102 Wn.2d at 233-34.

■ An implied contract exists if the employee acts in justifiable reliance on handbook promises. But general statements in a handbook do not create an implied contract. *Id.* at 224-25. To determine whether an implied contract was created, we look at the alleged understanding, the intent of the parties, business custom and usage, the nature of the employment, the situation of the parties, and the circumstances of the case. *Roberts*, 88 Wn.2d at 894. It is a question of fact whether statements amount to promises of specific treatment in specific situations; whether the employee justifiably relied on the promise; and whether a promise of specific treatment was breached. *Thompson*, 102 Wn.2d at 233.

All new Vaagen Brothers employees receive an employee handbook, outlining company policies. The handbook contains a section urging the employees to refrain from all union activities. It assures them a union is unnecessary because the company provides all the benefits of a union. The handbook states that termination will be governed by a progressive discipline protocol except for gross misconduct, subject to the discretion of a supervisor. The manual requires employees to contact a supervisor at least every two weeks when out sick. It warns that failure to call in for three consecutive days is deemed voluntary termination. A disclaimer on the first page announces that the handbook is not a contract.

Mr. Rowe claimed this handbook created a contract binding Vaagen Brothers to abide by the progressive discipline protocol. He should, therefore, have received a warning or,

at most, a written notice of violation instead of summary dismissal. Vaagen Brothers argued that the handbook did not create a contract as a matter of law.

■ This is, however, a question of fact. *Swanson,* 118 Wn.2d at 524. In *Swanson,* the defendant "almost certainly offered [the handbook] in consideration for the employees' promise not to unionize and the employees almost certainly accepted it in consideration for the forgoing of their legal right to unionize." *Id.* Here, the handbook also exhorted employees not to unionize. It promised them the benefits of a union, arguably including at least a hearing to determine whether misconduct was sufficiently "gross" to justify summary discharge. The employees did not unionize. A jury might well find that Vaagen Brothers breached an enforceable agreement. Vaagen Brothers contends the handbook contained an effective disclaimer. However, that is also a jury question. *Swanson,* 118 Wn.2d at 534-36 (a disclaimer may be negated by inconsistent employer representations and practices).

■ If an employer chooses to create an atmosphere in which the employee perceives the personnel policies and practices as fair and consistent, thus securing the benefit of a compliant and loyal workforce, the employer creates a situation "instinct with an obligation" and cannot treat its promises as illusory. *Thompson,* 102 Wn.2d at 229-30. The elements of recovery under this theory are: (1) the employer's unilateral objective manifestation of intent creates an expectation and thus an obligation of treatment in accord with written promises; and (2) the employee is induced by the promises to stay on the job and not actively seek other employment. *Id.* at 230.

The court correctly put the contract question to the jury. *Swanson,* 118 Wn.2d at 522-23.

## RETALIATION

Vaagen Brothers next contends that the retaliation claim must also fail as a matter of law. It contends a mere show-

ing that an employee filed an L&I claim and was terminated is not sufficient to establish retaliation. It asserts Vaagen Brothers responded to Mr. Rowe's prima facie case with legitimate reasons for the termination. This switched the burden back to the plaintiff to demonstrate that these reasons were pretextual. And Mr. Rowe failed to demonstrate pretext by producing evidence that he was either treated differently than similarly situated employees because of the L&I claim, or that he suffered disparate impact from a neutral policy.

■ *Prima Facie Case.* The plaintiff has the initial burden to establish a prima facie case of retaliation by showing (1) that he filed an L&I claim; (2) that he was fired; and (3) that there is a causal connection. *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 68, 821 P.2d 18 (1991).

Because of the difficulty of demonstrating a causal connection, which requires a showing of the employer's motives, it is enough to show that the employee filed an L&I claim, that the employer knew he filed it, and that the employee was discharged. This creates a rebuttable presumption of retaliation that precludes a judgment as a matter of law. *Id.* at 69.

The employer then has the burden to produce legitimate reasons for the termination. If it does so, the employee must demonstrate pretext. To do this, it is sufficient to show that the L&I claim was a "substantial factor" in the decision to fire him. *Id.* at 72-73. A factor is substantial if it so much as "tips the scales one way or the other[.]" *Id.*

Vaagen Brothers presented evidence that work-related injuries are a fact of life in a lumber mill; that 177 Vaagen Brothers employees filed 273 L&I claims over a five-year period; and that of those only 5, including Mr. Rowe, were discharged for misconduct.

Mr. Rowe has, nevertheless, established a prima facie case sufficient to require a jury determination.

## TRIAL PROCEDURE

The court ruled that the cumulative effect of procedural errors warranted a new trial.

■ We review an order granting a new trial for abuse of discretion. *Lockwood v. AC&S, Inc.*, 44 Wn. App. 330, 363, 722 P.2d 826 (1986) (citing *Gardner v. Malone*, 60 Wn.2d 836, 846, 376 P.2d 651, 379 P.2d 918 (1962)), *aff'd*, 109 Wn.2d 235, 744 P.2d 605 (1987). However, if the court's reasons are based on issues of law, the appellate court reviews for error of law only. *Lyster v. Metzger*, 68 Wn.2d 216, 226, 412 P.2d 340 (1966).

*Ex Parte Contact.* We hold that, as a matter of law, defense counsel's violation of the discovery rules required the trial judge to grant a new trial.

During the depositions of Drs. Cooke and Adams, it became apparent to Mr. Rowe's counsel that the defense must have talked to them. Counsel put his objection on the record. Defense counsel admitted the contact. When the depositions were offered at trial, the court deleted some portions of the testimony that obviously reflected information acquired after the events. On Mr. Rowe's posttrial motion for a new trial, the court considered that this did not cure the inherent prejudice.

■ *Court Rule.* Ex parte contact with an opposing party's expert medical witness is prohibited by court rule. CR 26(b)(5); *In re Firestorm 1991*, 129 Wn.2d 130, 137, 916 P.2d 411 (1996). Ex parte communication with a treating physician who testifies not as an expert but as a fact witness is prohibited as a matter of public policy. *Loudon v. Mhyre*, 110 Wn.2d 675, 677, 756 P.2d 138 (1988).

The primary concern is potentially prejudicial but irrelevant disclosures. The defendant's lawyer cannot make the relevance determination because he or she does not know

the nature of the confidential disclosure in advance. The doctor is not a lawyer. The plaintiff's lawyer needs to be present. *Id.* at 678. Moreover, the threat that a doctor might talk with a legal adversary outside the presence of plaintiff's counsel could have a chilling effect on the injured person's willingness to continue with treatment and be forthright with the physician. *Id.* at 679. The burden on defendants of being restricted to formal discovery is outweighed by the problems inherent in ex parte contact. *Id.* at 677.

■ *Title 51 RCW.* Vaagen Brothers argues incorrectly that Title 51 RCW removes this restriction whenever an L&I claim figures in the action. It is mistaken. The L&I claim must *be* the action. Here, the L&I claim is incidental to the common law tort action. The ex parte contact was a clear and, we believe, inexcusable violation of the discovery rules.

> In all hearings, actions or *proceedings before the department* or the board of industrial insurance appeals, or before any court *on appeal from the board,* any physician having theretofore examined or treated the claimant may be required to testify fully regarding such examination or treatment, and shall not be exempt from so testifying by reason of the relation of physician to patient.

RCW 51.04.050 (emphasis added). By its terms, RCW 51.04-.050 gives employers access to the claimant's medical records in proceedings before the Department of Labor and Industries, *under the Act,* and on appeal therefrom. It does not legitimize ex parte contact in a common law action. *Holbrook v. Weyerhaeuser Co.,* 118 Wn.2d 306, 310, 822 P.2d 271 (1992).

*Common Law Tort.* This was a common law tort action for retaliation not governed by Title 51 RCW. Ex parte contact was a clear violation of the discovery rules. Even if a plaintiff waives the patient/doctor privilege, the prohibition on ex parte contact remains in force. *Loudon,* 110 Wn.2d at 678. The contact was improper.

Mr. Rowe's counsel was concerned, not only about prejudicial information inadvertently disclosed by the doctors to

opposing counsel, but also about what counsel might have communicated to the doctors that colored their recollection of the events and influenced their deposition testimony.

*Remedy.* If, as the court concluded here, the ex parte communication prejudiced Mr. Rowe, the remedy is to ban the use of the evidence by the defense, in whole or in part. *See, e.g., Marek v. Ketyer,* 1999 PA Super 116, 733 A.2d 1268, 1270 (1999) (defense counsel precluded from calling plaintiff's treating physicians as expert witnesses at trial); *Porter v. Fieldcrest Cannon, Inc.,* 133 N.C. App. 23, 514 S.E.2d 517, 523 (1999) (portions of deposition related to ex parte communication should be excluded).

Vaagen Brothers suggests that Mr. Rowe invited the error because he, not the defense, called the doctors to the stand and put their deposition testimony before the jury. The problem, however, was defense counsel's discovery violation. Giving Mr. Rowe the option of forgoing his doctors' essential evidence is not a remedy.

This is grounds for a new trial by itself.

*Objectionable Questioning.* Finally, the record is replete with plaintiff's objections to the form of defense counsel's questions and the answers elicited. The court found the defense's "persistent objectionable method of questioning" witnesses requiring numerous unnecessary bench conferences and objections prejudiced Mr. Rowe. Our reading of the trial record suggests no reason for this court to substitute its judgment for that of the trial court on the prejudicial effect of this conduct.

The trial court's order granting a new trial is affirmed. The case is remanded for a new trial with instructions that the defense is precluded from using the testimony of Dr. Adams and Dr. Cooke.

SCHULTHEIS and KATO, JJ., concur.