# White v. Behlke

C.P. of Lackawanna County, no. 03 CV 2663.

*Jeffrey M. Kornblau* and *Lynn Sare Kornblau,* for plaintiffs.
*Eugene P. Feeney,* for defendants Behlke, Rabin and OB/GYN Consultants Ltd.
*Michael P. Perry,* for defendant CMC.

NEALON, *J.,* March 22, 2004—The parties' discovery dispute in this malpractice action concerns defense counsel's ability to privately communicate with a plaintiff's subsequent treating physician, and more specifically, the scope of the "ostensible employee" exception in Pa.R.C.P. 4003.6(3) which generally bars ex parte contact between a treating physician and defense counsel. Counsel for the defendant hospital argues that Rule 4003.6(3) permits defense counsel to privately discuss the plaintiff's medical condition with any subsequent treating physician who conceivably may be an ostensible employee of the hospital even if that physician's treatment is not the subject of the pending malpractice suit. For the reasons set forth below, we conclude that defense counsel may invoke the "ostensible employee"

exception to engage in ex parte communications with the plaintiff's treating physician only if that physician's status as an ostensible agent of the defendant and the physician's treatment of the plaintiff are both at issue in the medical negligence litigation.

## I. FACTUAL BACKGROUND

Plaintiffs Laura White and Daniel S. White filed this obstetrical negligence claim against various physicians and defendant Community Medical Center alleging pre-natal and perinatal injuries to the Whites' first child, Cody White, who was born at CMC on June 30, 2001. (See docket entry no. 11.) Almost two years after the birth of Cody, plaintiff Laura White became pregnant and came under the care of a perinatologist, Keith Rawlinson M.D., who delivered Ms. White's second child on August 5, 2003. An independent contractor physician with staff privileges at CMC, Dr. Rawlinson serves as the chair of CMC's maternal-fetal medicine department and he treated Ms. White at CMC and delivered her second child there. Dr. Rawlinson was not involved with the care of Cody White, nor is Dr. Rawlinson's treatment of the Whites' second child at issue in this case. (*Id.*, nos. 31, 34, ¶¶1-3; no. 35, p. 2.)

On September 18, 2003, the Whites' counsel forwarded a letter to Dr. Rawlinson requesting a copy of his medi-cal records pertaining to his care and treatment of Laura White in conjunction with her second pregnancy. (*Id.*, no. 34, exhibit B.) Upon his receipt of this correspon-dence, Dr. Rawlinson transmitted the records request to the CMC's risk manager who in turn forwarded it to CMC's counsel in this case. By letter dated October 7,

2003, counsel for CMC advised the Whites' counsel that he was in receipt of the records request directed to Dr. Rawlinson and had "been advised that the only records that Dr. Rawlinson has would be those contained in the CMC chart" which was already being copied for production. (*Id.,* exhibit C.) Based upon the assumption that CMC's counsel had communicated ex parte with Dr. Rawlinson, the Whites' counsel forwarded a letter to CMC's counsel objecting to such putative contact as violative of Pa.R.C.P. 4003.6. (*Id.,* exhibit D.)

On December 8, 2003, the Whites filed the instant motion seeking to preclude defense counsel from engaging in private discussions with Dr. Rawlinson and alleged that "CMC's counsel has communicated with Dr. Rawlinson on an ex parte basis" and "has clandestinely shared the information derived from Dr. Rawlinson ex parte with co-defense counsel in this litigation." (*Id.,* no. 34, ¶¶5-6.) Counsel for CMC has adamantly denied participating in any direct contact with Dr. Rawlinson, who apparently forwarded the Whites' records request to the CMC risk manager on his own volition and without any prompting by CMC. (*Id.,* no. 31, ¶¶5, 7, 10-11.) The Whites have not produced any evidence of ex parte communications between Dr. Rawlinson and CMC's counsel to date. Nevertheless, at the time of oral argument on February 18, 2004, counsel for CMC did indicate his intention to privately discuss this matter with Dr. Rawlinson in the future on the basis that Dr. Rawlinson is an ostensible employee of CMC. Thus, although no ex parte contacts have yet taken place, the Whites' motion seeking to preclude any future private communications between Dr. Rawlinson and CMC's counsel does present a justiciable issue.

The Whites maintain that Pa.R.C.P. 4003.6 regulates discovery from a treating physician and obligates defense counsel to employ a formal method of discovery to obtain information from a treating physician absent written consent of the plaintiff/patient. CMC counters that Rule 4003.6 provides exceptions for certain types of physicians and permits a defense lawyer to obtain information privately from defense counsel's client or an actual or ostensible employee of that client. CMC posits that since Dr. Rawlinson is the chair of CMC's maternal-fetal medicine department, he is an ostensible agent of CMC and is allowed to participate in ex parte discussions with CMC's counsel. Consequently, it is necessary to examine the parameters of Rule 4003.6's prohibition against ex parte communications, and in particular, the limits of the "ostensible employee" exception.

## II. DISCUSSION

### (A) *Ex Parte Prohibition*

The debate over the propriety of ex parte contacts between treating physicians and their patients' adversaries in litigation has created dissention among the trial bar for decades. Patient advocates have long maintained that although the physician-patient privilege is waived by the filing of suit, a separate fiduciary relationship exists between the physician and patient which is derived from public policy considerations and the physician's code of ethics. See Woodard, *Shielding the Plaintiff and Physician: The Prohibition of Ex Parte Contacts with a Plaintiff's Treating Physician,* 13 Campbell L. Rev. 233, 243-45 (spring 1991). Plaintiffs have argued that this pub-

lic policy-based fiducial duty bars treating physicians from engaging in certain litigation conduct to the detriment of their patients. See *e.g., Alexander v. Knight,* 25 D.&C.2d 649, 655 (Phila. Cty. 1961), *aff'd per curiam on opinion below,* 197 Pa. Super. 79, 177 A.2d 142 (1962) (reasoning that members of the medical profession owe "a duty to aid the patient in litigation" and "a duty to refuse affirmative assistance to the patient's antagonist in litigation," subject to the physician's obligation "to speak the truth . . . only at the proper time.").

Several trial courts relied upon this public policy in barring physicians from participating in ex parte interviews with defense counsel, see *McNally v. Easton Hospital,* 46 Northamp. Cty. Rep. 202, 204-205 (1985); *Hoffmeyer v. Pell,* 23 D.&C.3d 448, 453-55 (Somerset Cty. 1982), or performing medical examinations for the defense pursuant to Pa.R.C.P. 4010. See *Freyer v. The Travelers Indemnity Co.,* 15 D.&C.3d 649, 651 (Westmoreland Cty. 1980); *Shea v. McCadden,* 46 D.&C.2d 560, 562 (Delaware Cty. 1969). The most comprehensive discussion of the public policy ban is contained in *Manion v. N.P.W. Medical Center,* 676 F. Supp. 585 (M.D. Pa. 1987) (Nealon, C.J.) where the court found that "[t]he statutory privilege determines *whether* certain information may be disclosed" whereas "the prohibition against unauthorized *ex parte* contacts regulates only *how* defense counsel may obtain information from a plaintiff's treating physician, *i.e.,* it affects defense counsel's methods, not the substance of what is discoverable." *Id.* at 593. (emphasis added) In holding that Pennsylvania law requires reasonable notice to plaintiffs or their counsel before defense counsel may attempt to com-

municate privately with the plaintiff's treating physician, the *Manion* court concluded:

"When a plaintiff's treating physician is interviewed *ex parte* by defense counsel without prior notice to the plaintiff or his counsel, there are no safeguards against the revelation of matters irrelevant to the lawsuit and personally damaging to the plaintiff/patient, and the potential for breaches in the confidentiality between a patient and his physician could have a chilling effect upon the patient-physician relationship.

"Furthermore, the unauthorized *ex parte* interview of a plaintiff's treating physician by defense counsel creates a situation which may invite questionable conduct. This court will not overlook the current concerns in the medical malpractice insurance industry and the attitudes of physicians and carriers alike. An unauthorized *ex parte* interview could disintegrate into a discussion of the impact of a jury's award upon a physician's professional reputation, the rising cost of malpractice insurance premiums, the notion that the treating physician might be the next person to be sued, and other topics which might influence the treating physician's views. The potential for impropriety grows even larger when defense counsel represents the treating physician's own insurance carrier and when the doctor, who typically is not represented by his personal counsel at the meeting, is unaware that he may become subject to suit by revealing the plaintiff/ patient's confidences which are not pertinent to the pending litigation." *Id.* at 594-95. (emphasis in original) Accord, Corboy, *Ex Parte Contacts Between Plaintiff's Physician and Defense Attorney: Protecting the Patient-*

*Litigant's Right to a Fair Trial,* 21 Loy. U. Chi. L.J. 1001 (summer 1990).

Although the Supreme Court of Pennsylvania never addressed the appropriateness of such ex parte contact prior to the adoption of Pa.R.C.P. 4003.6, the Superior Court condoned the use of private interviews as a cost-efficient alternative to formal discovery and declined, on the facts alleged, to recognize a cause of action for defamation and breach of confidentiality against a plaintiff's treating physician who participated in private pretrial discussions with defense counsel. See *Moses v. McWilliams,* 379 Pa. Super. 150, 167-69, 549 A.2d 950, 958-60 (1988), *appeal denied,* 521 Pa. 631, 558 A.2d 532 (1989). In the wake of *Moses,* the Supreme Court promulgated Pennsylvania Rule of Civil Procedure 4003.6 which states:

*"Discovery of treating physician*

"Information may be obtained from the treating physician of a party only upon written consent of that party or through a method of discovery authorized by this chapter. This rule shall not prevent an attorney from obtaining information from

"(1) the attorney's client,

"(2) an employee of the attorney's client, or

"(3) an ostensible employee of the attorney's client." Pa.R.C.P. 4003.6. See also, *Heacock v. Sun Co. Inc.,* 38 D.&C.4th 1, 6 (Phila. Cty. 1998) ("In addition to Pennsylvania decisions which clearly expressed a strong public policy discouraging ex parte communications between defense counsel and treating physicians, Rule 4003.6 was anticipated by Chief Judge William J. Nealon [in 1987

in *Manion v. N.P.W. Medical Center of N.E. Pennsylvania Inc.*]."").

The plain language of Rule 4003.6 clearly indicates that unless defense counsel secures the written consent of the patient, [s]he may only obtain information from a treating physician by way of written interrogatories, requests for production of documents or depositions which require advance notice to the patient and afford the patient an opportunity to object prior to the disclosure of irrelevant or privileged matter. See *e.g.,* Pa.R.C.P. 4003.1(a), 4004(a)(1) and (e), 4007.1(a), 4009.21(a) and (c), 4012, 4016. The Pennsylvania trial courts have strictly enforced the ban against ex parte contact and have shown little tolerance for violations of Rule 4003.6. See *Jakobi v. Ager,* 45 D.&C.4th 189, 194-95 (Phila. Cty. 2000) (since defense counsel conversed by telephone with the treating physician after he was subpoenaed for a deposition, the defense attorney and his entire firm were disqualified from representing the defendants and barred from transmitting to successor counsel any information obtained during the telephone discussion); *Tollari v. General Motors Corp.,* 40 D.&C.4th 339, 346-48 (Allegheny Cty. 1998) (although plaintiff provided defense counsel with a signed authorization for release of medical records, he did not consent to ex parte discussions or solicitation of further reports, such that defense counsel was ordered to return a letter sent to him by plaintiff's treating physician and was prohibited from referencing the substance of the letter during trial).

In the only reported appellate case addressing Rule 4003.6, the Superior Court in *Marek v. Ketyer,* 733 A.2d 1268 (Pa. Super. 1999), *appeal denied,* 561 Pa. 677, 749

A.2d 471 (2000), examined the breadth of the ex parte proscription. Defense counsel in *Marek* spoke privately with a physician who had interpreted the deceased plaintiff's echocardiogram and the defense retained that physician as a liability expert in a malpractice action instituted by the plaintiff's parents. The trial court denied the plaintiff's motion in limine seeking to preclude the physician's testimony at trial and permitted the physician to testify regarding the appropriate standard of care, provided that he did not mention his personal involvement with the child's treatment. The lower court reasoned that Rule 4003.6 "was designed to prevent a treating physician from disclosing confidential information received from a patient" and was not violated by the physician's testimony concerning standard of care since he did not divulge confidential information. *Id.* at 1269.

On appeal, defense counsel contended that the physician could not be classified as a "treating physician" under Rule 4003.6 since he merely interpreted the echocardiogram and communicated his impressions to members of the cardiology team, but never spoke with the parents or recommended any medication or therapy. In rejecting that argument, the Superior Court noted that the physician had billed the parents for his services which were rendered "in the treatment of this child in an effort to see to her recovery" and found that he "must be considered a treating physician." *Id.* The *Marek* court likewise disavowed the suggestion that Rule 4003.6 only bars the disclosure of "confidential information" and instead concluded that "it prohibits a treating physician from providing the opposing party with any information without written consent of the patient." *Id.*

In awarding the plaintiff a new trial based upon the defense's violation of Pa.R.C.P. 4003.6, the Superior Court observed that "[e]ven prior to promulgation of Rule 4003.6, Pennsylvania's policy of protecting the confidential nature of physician-patient relationships was recognized in *Manion v. N.P.W. Medical Center Inc.,* 676 F. Supp. 585 (M.D. Pa. 1987)." *Id.* at 1270. The court also agreed that the rule "regulates the manner in which defense counsel obtains information from the plaintiff's treating physician" and "affects defense counsel's methods, not the substance of what is discoverable." *Id.* (quoting *Manion, supra*). Thus, *Marek* construed Pa.R.C.P. 4003.6 as imposing a broad ban against ex parte contacts and held:

"Rule 4003.6 is clear in its directive. Only upon consent or through a method of authorized discovery may information be obtained from a party's treating physician. These procedures protect both the patient and the physician by ensuring that adverse counsel will not abuse the opportunity to contact or interrogate the physician privately. When formal discovery is undertaken in the presence of a patient's counsel it can be assured that irrelevant medical testimony will not be elicited and confidences will not be breached, preserving the trust which exists between doctor and patient." *Id.* Compare *Blaner v. IDEC Pharmaceuticals Corp.,* 58 D.&C.4th 129, 135-36, 143-44 (Allegheny Cty. 2002) (recognized expert in skin autoimmune disease with whom plaintiff's treating physician had informally consulted, but who never treated plaintiff, charged for his consultation, made any treatment decisions or established a physician-patient relationship with plaintiff, was not barred by Rule 4003.6

from testifying as a defense expert in a drug product liability and malpractice case filed by plaintiff).

### (B) *Ostensible Employee Exception*

Under Pennsylvania tort law, hospitals, HMOs and physicians may be vicariously liable for the negligence of their own employees, *Tonsic v. Wagner,* 458 Pa. 246, 253-54, 329 A.2d 497, 501 (1974), and the malpractice of independent contractors who are their ostensible or apparent employees. *Parker v. Freilich,* 803 A.2d 738, 746-49 (Pa. Super. 2002), *appeal denied,* 573 Pa. 659, 820 A.2d 162 (2003); *Capan v. Divine Providence Hospital,* 287 Pa. Super. 364, 368-69, 430 A.2d 647, 649-50 (1980). In defending a medical negligence claim, defense counsel obviously must be permitted to confer privately with the attorney's client or the actual or ostensible employees of the client who were involved with the plaintiff's care and treatment which are the subject of the suit. For that reason, Rule 4003.6 states that it does "not prevent an attorney from obtaining information from (1) the attorney's client, (2) an employee of the attorney's client, or (3) an ostensible employee of the attorney's client."

Counsel for CMC interprets the "ostensible employee" exception in Pa.R.C.P. 4003.6 as granting defense counsel carte blanche authority to privately discuss the plaintiff's medical condition with any past or present treating physician who serves as chair of any medical department at CMC or otherwise could be regarded as CMC's ostensible agent. See *Reaser v. CMC,* 102 Lacka. Jur. 219, 224-28 and n.4 (2000) (analyzing hospital actions which could be deemed "holding out" the indepen-

dent contractor physician as a hospital employee). According to CMC, although Dr. Rawlinson's management of Ms. White's second pregnancy and his purported status as an ostensible employee of CMC are not in dispute in this case, CMC's counsel may nonetheless converse privately with Dr. Rawlinson about Ms. White's condition and care since he could be considered an ostensible agent of the hospital in another setting. No Pennsylvania case has addressed the scope of the "ostensible employee" exception or the construction of Rule 4003.6(3) being advanced by CMC.

We interpret the exceptions in Pa.R.C.P. 4003.6 as applying only to defense counsel's client and the client's actual or ostensible employees whose treatment and agency status are relevant to the claims in the underlying malpractice suit. By way of illustration, if the plaintiff presented to the CMC emergency room with an orthopedic ailment and was assigned an attending physician by CMC, the hospital's counsel would be permitted to privately discuss the plaintiff's condition and care with that assigned physician if the plaintiff later commenced a malpractice action against CMC and asserted that it was vicariously liable for the attending physician's negligence under an ostensible agency theory of liability. However, if that same plaintiff later returned to the CMC for psychiatric, gynecological, urological or other care that was wholly unrelated to the earlier orthopedic treatment in the emergency room, CMC's counsel in the emergency medicine case would not be at liberty to privately discuss the plaintiff's mental health, gynecologic or urologic condition with the plaintiff's treating physicians who coincidentally chair those departments at the CMC since neither their treatment nor their status as os-

tensible employees would be in question in the malpractice suit.

In ascertaining the intention of the Supreme Court in promulgating Rule 4003.6, it is presumed that the Supreme Court did not intend a result that is absurd or unreasonable. See Pa.R.C.P. 128(a). Taking CMC's argument to its logical extension, "the attorney's client" exception in Rule 4003.6(1) would permit CMC's counsel to privately discuss the plaintiff's medical condition with any former or current treating physicians so long as they are the attorney's client in *any* case. For example, if Laura White had received subsequent treatment from a physician at a different hospital and CMC's counsel in this case fortuitously represents that treating physician or other hospital in another malpractice matter, then CMC's proffered construction of Rule 4003.6 would enable its counsel to participate in ex parte communications with that physician or the other hospital's actual or ostensible employees since they are "the attorney's client," albeit in an unrelated case. Such an absurd or unreasonable result would allow defense counsel to circumvent the rule's ban against ex parte contact by allowing defense attorneys to privately discuss the plaintiff's medical condition with those treating physicians that defense counsel incidentally represents in other matters. Cf. *Heacock,* 38 D.&C.4th at 3-4, 8 (rejecting defendant's argument that its counsel could unilaterally secure plaintiff's medical records directly from the workers' compensation carrier that defense counsel represented in other cases and holding that "[t]he term 'client' in Rule 4003.6 can only reasonably be read to apply to the specific client involved in that litigation.").

Pa.R.C.P. 4003.6 was adopted to "protect both the patient and the physician by ensuring that adverse counsel will not abuse the opportunity to contact or interrogate the physician privately" and to "assure[] that irrelevant medical testimony will not be elicited and confidences will not be breached . . . ." *Marek,* 733 A.2d at 1270. Allowing defense counsel to privately discuss the plaintiff's medical condition with any department chair who subsequently treated the plaintiff for unrelated conditions would emasculate the stated purposes of the rule. See Pa.R.C.P. 127(c) (the intention of the Supreme Court in adopting a rule may be ascertained by considering the occasion and necessity for the rule, the mischief to be remedied, and the object to be attained). Since Dr. Rawlinson's classification as an ostensible employee of CMC and his treatment of Laura White are not in dispute in this malpractice action, CMC's counsel may not engage in ex parte contact with Dr. Rawlinson under the guise of the "ostensible employee" exception in Rule 4003.6(3). If CMC's counsel wishes to obtain relevant medical information from Dr. Rawlinson with regard to his treatment of Laura White, defense counsel may utilize a formal method of discovery which affords the patient advance notice and an opportunity to object. Accordingly, the Whites' motion to preclude any ex parte discussions between Dr. Rawlinson and CMC's counsel in the future will be granted.[1]

---

1. Based upon the mistaken belief that CMC's counsel had already participated in ex parte contact with Dr. Rawlinson, the Whites' motion also sought to bar the defense "from calling Dr. Rawlinson as a trial witness." (dkt. entry no. 34, p. 4.) Since no violation of Rule 4003.6 has yet occurred, the Whites' request to preclude Dr. Rawlinson from testifying will be denied provided that defense counsel resorts to a formal method of discovery in securing information from Dr. Rawlinson during the remainder of this suit.

## ORDER

And now, March 22, 2004, upon consideration of the plaintiffs' motion to preclude the defendants from engaging in ex parte communications with the female plaintiff's subsequent treating physician, Keith Rawlinson M.D., the memoranda of law submitted by the parties and the oral argument of counsel, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:

(1) Plaintiffs' motion to preclude the defendants and their counsel and representatives from engaging in ex parte communications with Dr. Keith Rawlinson in the future is granted; and

(2) Since the defendants and their counsel and representatives have not initiated any such ex parte contact with Dr. Keith Rawlinson to date, the plaintiffs' request to bar Dr. Rawlinson from testifying as a witness in this case is denied provided that the defendants and their counsel and representatives comply with Pa.R.C.P. 4003.6 and employ a formal method of discovery in obtaining medical information about the plaintiff from Dr. Rawlinson during the remainder of this litigation.

