**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| BOBBI ANN MERTIS AND JOSEPH MERTIS | : | No. 31 MAP 2023 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Superior Court dated August 2, |
| v. | : | 2022, reconsideration denied |
| | : | October 17, 2022, at No. 1547 MDA |
| | : | 2021, Reversing the Order of the |
| DONG-JOON OH, M.D., NORTH | : | Luzerne County Court of Common |
| AMERICAN PARTNERS IN ANESTHESIA | : | Pleas, Civil Division, dated October |
| (PENNSYLVANIA), LLC, WILKES-BARRE | : | 28, 2021 at No. 9655 of 2017 and |
| HOSPITAL COMPANY, LLC D/B/A | : | Remanding. |
| WILKES-BARRE GENERAL HOSPITAL | : | |
| AND COMMONWEALTH HEALTH | : | ARGUED:  October 17, 2023 |
| | : | |
| | : | |
| APPEAL OF: DONG-JOON OH, M.D. | : | |

**OPINION**

**JUSTICE MUNDY**                                               **DECIDED:  June 18, 2024**

We granted allowance of appeal to consider the application of Pennsylvania Rule

of Civil Procedure 4003.6, which provides:

**Rule 4003.6. Discovery of Treating Physician**

Information may be obtained from the treating physician of a
party only upon written consent of that party or through a
method of discovery authorized by this chapter.  This rule shall
not prevent an attorney from obtaining information from

(1) the attorney's client,

(2) an employee of the attorney's client, or

(3) an ostensible employee of the attorney's client.

Pa.R.Civ.P. 4003.6. Specifically, we must determine whether the first exception to Rule 4003.6 (client exception) permits an attorney to obtain information outside the discovery process from one of the plaintiff's nonparty treating physicians, who becomes the attorney's client after another attorney in the same law firm became previously engaged to represent a named defendant physician in the same medical malpractice action. Because we conclude that Rule 4003.6 precludes a law firm representing a defendant treating physician from obtaining information outside the discovery process from a nonparty treating physician by subsequently entering into an attorney-client relationship with the nonparty treating physician, we affirm the Superior Court.

## I. FACTUAL AND PROCEDURAL HISTORY

On August 16, 2017, Bobbi Ann Mertis filed a medical malpractice action against Dr. Dong-Joon Oh, North American Partners in Anesthesia (Pennsylvania), LLC (NAPA), Wilkes-Barre Hospital, and Commonwealth Health. The complaint alleged Dr. Oh negligently administered a femoral nerve block to anesthetize Mertis's knee prior to her August 17, 2015 ACL reconstruction surgery, which caused a femoral nerve injury. Dr. Oh retained James Doherty, Esq. and Grace Doherty Hillebrand, Esq. from the law firm of Scanlon, Howley & Doherty (Scanlon Howley) to represent him. In April 2018, attorneys Doherty and Doherty Hillebrand entered their appearance for Dr. Oh and his employer, NAPA.

On July 27, 2020, Mertis, represented by Angelo Theodosopoulos, Esq., served a subpoena on Dr. Eugene Kim, the orthopedic surgeon who performed Mertis's knee surgery, to appear at a discovery deposition. Mertis had not named Dr. Kim as a defendant, although some of the complaint's allegations were critical of the care he provided. *See* Second Am. Compl., 3/30/18, at ¶¶ 30, 42 (asserting "Dr. Kim did not identify an anesthetic plan for the procedure," and Dr. Kim did not warn Mertis of the risks

of femoral nerve blocks). Additionally, the complaint alleged that "Dr. Kim told Mrs. Mertis that the likely cause of her [post-operative] symptoms was the femoral nerve block." *Id.* at ¶ 78. After receiving the subpoena, Dr. Kim asked his professional liability insurer to assign Kevin Hayes, Esq. of Scanlon Howley to represent him in this case because Hayes had previously represented Dr. Kim in an unrelated malpractice case. Scanlon Howley informed Dr. Kim that it was already representing Dr. Oh in the matter, and Dr. Kim signed a waiver of any potential conflict of interest. On August 28, 2020, Attorney Hayes then sent an email to Attorney Theodosopoulos stating Dr. Kim had retained him and requesting to reschedule Dr. Kim's deposition. Attorney Theodosopoulos did not respond, and the deposition was not rescheduled.

On February 8, 2021, Attorney Hayes attended a deposition of a non-party anesthesiology witness, Dr. Anupama Singh. The deposition transcript indicates that Attorneys Hayes and Doherty Hillebrand appeared as counsel for Dr. Oh and NAPA. *See* Singh Deposition Transcript, 2/8/21 (R.R. at 90a). That same day, after Dr. Singh's deposition, Attorney Theodosopoulos sent a letter to Attorney Hayes, stating in part:

> I was surprised when, on August 28, 2018 [sic], you contacted me to advise you represented the plaintiff's treating, orthopedic surgeon, Eugene Kim, M.D., in this case (correspondence included). Your law firm was never authorized to contact and speak to Dr. Kim.
>
> You also showed up to today's 11:00 a.m. [Z]oom deposition at 11:20 a.m. for Dr. Oh on behalf of Grace Doherty Hillebrand and your firm. Before you left the proceeding at my insistence, you told me you already spoken [sic] to the plaintiff's treating surgeon, Dr. Kim, in connection with this case.
>
> Your law firm has a clear conflict in continuing to represent the defendant anesthesiologist and plaintiff's treating orthopedic surgeon. From today's occurrence, it is also clear that your firm has not set up and communicated to

> each other any sort of "Chinese Wall" to isolate and prevent communications between yourself and Mrs. Hillebrand.

Theodosopoulos's Letter to Hayes, 2/8/21, at 1 (R.R. at 93a). Attorney Theodosopoulos also sent a materially identical letter to Attorney Doherty Hillebrand. Theodosopoulos's Letter to Doherty Hillebrand, 2/8/21, at 1 (R.R. at 96a). Neither Attorney Hayes nor Attorney Doherty Hillebrand responded to these letters.

On April 16, 2021, Mertis filed a motion for sanctions to disqualify defense counsel—identified as Attorneys Brian Dougherty, James Doherty, Grace Doherty Hillebrand, Kevin Hayes, and the law firm Scanlon Howley—from representing Dr. Oh and to bar defense counsel's further *ex parte* communication with Dr. Kim. Relevant to this appeal, Mertis argued that the attorneys from Scanlon Howley should be disqualified from this case for violating Rule 4003.6 by *ex parte* communicating with Dr. Kim. Mot. for Sanctions, 4/16/21, at ¶¶ 36-39 (R.R. at 20a-21a). The trial court held argument on the motion at which Attorney Hayes argued there was no violation of Rule 4003.6 because it contains an exception permitting an attorney to communicate with a treating physician who is the attorney's client. N.T., 8/4/21, at 10 (R.R. at 253a). Further, Attorney Hayes highlighted that Dr. Kim reached out to him to seek representation in response to receiving a subpoena. *Id.* Attorney Hayes also contended that "Rule 4003.6 was not only intended to protect patient's [sic] rights of the Plaintiff, but also the rights of Dr. Kim [to] have representation at a deposition in the case where his treatment has been impugned." *Id.* at 11 (R.R. at 253a).

Regarding his appearance at Dr. Singh's Zoom deposition, Attorney Hayes explained that based on his relative technological proficiency, the law firm's staff asked him to get on the Zoom call to notify the attendees that Attorney Doherty Hillebrand would be late because she was involved in another deposition. *Id.* at 28-29 (R.R. at 257a). Attorney Hayes represented that the deposition did not start, and his involvement was

limited to notifying everyone that Attorney Doherty Hillebrand would be joining the deposition when she became available. *Id.* at 29 (R.R. at 257a). Further, Attorney Hayes argued that it was improper "to raise whether or not we are properly putting up the appropriate separations between our clients, because, in any event, we don't think there's a conflict. Even if there was a conflict . . . it's on us to resolve that conflict, not Plaintiff's Counsel, and, respectfully, not the Court." *Id.* at 29-30 (R.R. at 257-58a).

On October 28, 2021, the trial court denied the motion for sanctions, finding no violation of Rule 4003.6. It explained:

> [Mertis] has offered nothing more than unfounded accusations and conclusions concerning the nature and extent of Mr. Hayes' communications with Dr. Kim and Mr. Hayes' involvement in the defense of Dr. Oh. There is no evidence to suggest that Attorney Hayes was ever involved in the representation of Dr. Oh or that Grace [Doherty Hillebrand] or James Doherty have had any communications with Dr. Kim or were involved in the representation of Dr. Kim in anyway.
>
> Counsel for Dr. Oh did not seek out Dr. Kim to communicate about [Mertis]. Rather, upon service of the subpoena to attend and testify at a deposition, Dr. Kim asked his insurance carrier to appoint Mr. Hayes to represent him for the deposition.

Tr. Ct. Op., 2/17/22, at 4-5. Based on its conclusion that defense counsel had not violated Rule 4003.6, the trial court denied Mertis's motion for sanctions. Mertis timely appealed to the Superior Court.[1]

In a unanimous published opinion, the Superior Court reversed the trial court and remanded. *Mertis v. Oh*, 289 A.3d 532, 534 (Pa. Super. 2022). The Superior Court noted

---

[1] As additional grounds for disqualification, Mertis had argued that defense counsel's concurrent representation of Dr. Oh and Dr. Kim violated Pennsylvania Rule of Professional Conduct 1.7(a), which prohibits a lawyer from undertaking representation of a client that involves a concurrent conflict of interest. Motion for Sanctions, 4/16/21, at ¶¶ 40-52 (R.R. at 21a-23a). The trial court rejected Mertis's Rule 1.7 argument, and Mertis did not appeal that aspect of the trial court's order.

that an order denying a motion to disqualify a law firm from litigation is immediately appealable as a collateral order, its scope of review for disqualification orders is plenary, and its standard of review for interpreting the Rules of Civil Procedure is *de novo*. *Id.* at 535 n.1 (citing *Rudalavage v. PPL Elec. Utils. Corp.*, 268 A.3d 470, 478 (Pa. Super. 2002), and Pa.R.A.P. 313 (regarding collateral orders)); *id.* at 535 n.2 (citing *Rudalavage*, 268 A.3d at 478 (providing scope of review), and *Brown v. Quest Diagnostics Clinical Labs, Inc.*, 209 A.3d 386, 389 (Pa. Super. 2019) (stating standard of review)).

Examining Rule 4003.6, the court noted it is a general rule prohibiting *ex parte* communications between opposing counsel and a party's treating physician, which "implicitly recognizes the privacy interest underlying the physician-patient relationship and the physician's duty of loyalty to the patient." *Id.* at 536 (citing *Marek v. Ketyer*, 733 A.2d 1268, 1270 (Pa. Super. 1999), *appeal denied*, 749 A.2d 471 (Pa. 2000)). It stated that the rule protects the patient and the physician by permitting opposing counsel to obtain information from a party's treating physician only through the party's written consent or an authorized method of discovery. *Id.*

The Superior Court further recognized that Rule 4003.6 has three exceptions permitting the attorney of a treating physician to obtain information from the client or the client's actual or ostensible employees who were involved with the patient's treatment. *Id.* In this case, the court noted the relevant exception is provided in Rule 4003.6(1), which states that the rule does "not prevent an attorney from obtaining information from (1) the attorney's client." *Id.* (quoting Pa.R.Civ.P. 4003.6(1)). The Superior Court framed the issue as whether Scanlon Howley was permitted to have *ex parte* communications with Dr. Kim because he was now its client. *Id.* Finding that Rule 4003.6 "envisioned [] that a different law firm would represent the treating physician," and not a situation where the same firm represented multiple treating physicians, the court concluded the Rule

4003.6(1) client exception was inapplicable. *Id.* The Superior Court then reasoned that Scanlon Howley's concurrent representation of Dr. Oh and Dr. Kim was tantamount to *ex parte* communication because it provided "the defense access to information that can only be obtained otherwise through authorized discovery that would be limited to material and pertinent information preventing breach of the confidential doctor/patient relationship only to the extent necessary." *Id.* The court also concluded that neither Dr. Kim's request to his insurer for Attorney Hayes's appointment nor deference to Dr. Kim's choice of counsel could excuse compliance with Rule 4003.6. *Id.* For these reasons, the Superior Court found Rule 4003.6 was violated and reversed the trial court. *Id.*

Regarding Mertis's request for the disqualification of Scanlon Howley based on its violation of Rule 4003.6, the Superior Court noted "this remedy is warranted under limited circumstances." *Id.* at 537 (citing *Rudalavage*, 268 A.3d at 478). Because disqualification is available only when there is no other remedy and it is necessary to ensure a fair trial, the Superior Court remanded to the trial court to determine the proper remedy for Appellee's violation of Rule 4003.6. *Id.*

## II. ISSUE AND STANDARD OF REVIEW

This Court granted allowance of appeal to consider the following issue:

> Whether, in an issue of first impression and significant public importance, Pa.R.C.P. 4003.6(1) expressly permits defense counsel in a medical malpractice case to speak with plaintiff's treating physicians outside the discovery process in circumstances where: (i) Pa.R.C.P. 4003.6(1) expressly allows defense counsel to communicate directly with treating physicians who are firm clients; and (ii) both treating physicians are clients of the law firm in question[.]

*Mertis v. Oh*, 294 A.3d 1204, 1204-05 (Pa. 2023) (per curiam).

This issue presents a legal question regarding the interpretation of our rules of civil procedure over which our standard of review is *de novo* and our scope of review is plenary. *Marlette v. State Farm Mut. Auto. Ins. Co.*, 57 A.3d 1224, 1228 (Pa. 2012).

## III. OBTAINING INFORMATION FROM PLAINTIFF'S TREATING PHYSICIAN

## A. PARTIES' ARGUMENTS

Dr. Oh (Appellant) argues that the plain meaning of Rule 4003.6 allows an attorney who represents a treating physician to obtain information from the treating physician outside of the formal discovery process. Appellant's Brief at 14. Appellant contends that Rule 4003.6 is a permissive rule that balances a plaintiff's medical privacy rights and counsel's need to communicate with treating physicians involved in litigation. *Id.* Acknowledging that Rule 4003.6's general principle is that "information must be obtained through the discovery process," Appellant notes the rule contains three exceptions. *Id.* Appellant asserts that the first exception, permitting an attorney to obtain information from her client, "clearly applies here." *Id.* at 15. Appellant insists "[t]here are no restrictions under this provision with regard to a law firm's ability to communicate with a treating physician in such circumstances." *Id.*

Appellant faults the Superior Court for sidestepping Rule 4003.6's plain language and concluding that the rule restricts a law firm from obtaining information from treating physicians who are its clients. *Id.* Because Rule 4003.6 is unambiguous, Appellant maintains the Superior Court should not have considered the drafter's intent or claims of potential mischief arising from literal application of the rule. *Id.* at 16. Specifically, Appellant criticizes the Superior Court's suggestion that the rule was not intended to cover situations where the same law firm represents more than one treating physician. *Id.* at 17. Instead of modifying the rule by judicial fiat, Appellant claims that if our Court needs

to modify the rule to account for this scenario, we should use the ordinary rulemaking process that involves notice and permits comments from the bench and bar. *Id.* at 18.

Appellant further accuses the Superior Court of engaging in improper fact finding to conclude that he violated Rule 4003.6. *Id.* at 19. Appellant stresses the trial court found Mertis did not present any evidence that Appellant's counsel had *ex parte* communications with Dr. Kim about the case. *Id.* (citing Tr. Ct. Op., 2/17/22). Instead of crediting this trial court finding, however, Appellant alleges the Superior Court concluded there were facts that amounted to a violation of Rule 4003.6. *Id.* at 20. Because there are no facts of record to support this conclusion, Appellant argues we should reverse the Superior Court. *Id.*

Next, Appellant contends there is no authority to disqualify Scanlon Howley for a violation of the discovery rules. *Id.* at 21. Appellant notes that our Court has cautioned that while disqualification may be necessary to ensure a fair trial, neither trial nor appellate courts have the authority to impose that punishment for a violation of the Rules of Professional Conduct, a power reserved to our Court and the tribunals we establish. *Id.* at 21-22 (citing *Reilly by Reilly v. SEPTA*, 489 A.2d 1291, 1299 (Pa. 1985); *In re Estate of Pedrick*, 482 A.2d 215, 221 (Pa. 1984)). Additionally, Appellant argues the Superior Court's conclusion that disqualification may be warranted overlooked Rule of Professional Conduct 1.7, which permits an attorney to represent two clients whose interests conflict as long as the clients give their informed consent. *Id.* at 22. Because Mertis did not prove an irreconcilable conflict of interest between Dr. Oh and Dr. Kim, Appellant argues that "the Superior Court's decision regarding 'mischief' that may be created by simultaneous representation of two treating physicians is speculative and unsupported." *Id.* at 23.

Additionally, Appellant asserts that Mertis waived her right to object to the law firm's joint representation of the two treating physicians. *Id.* Appellant explains that

Scanlon Howley had been representing him since 2018 and Dr. Kim since 2020, but Mertis waited eight months after learning of the firm's representation of Dr. Kim to object. *Id.* Relying on federal case law, Appellant asserts that a delay in filing a motion to disqualify is a basis for denial. *Id.* at 24. Because Mertis's delay in filing the motion to disqualify provides an inference that it was filed for tactical reasons, Appellant cautions us against permitting this "gamesmanship" and maintains we should reverse the Superior Court. *Id.* at 25.

Lastly, Appellant argues we should reverse the Superior Court to reaffirm a litigants' right to counsel of their choice. *Id.* at 26. Appellant recognizes that this right is not absolute, but it can be superseded only by a serious breach of an ethical or other duty. *Id.* Because Dr. Oh's and Dr. Kim's choice of counsel should be given deference and because Mertis "likely filed [the motion to disqualify] for tactical purposes," Appellant urges us to reverse. *Id.* at 27.

In response, Mertis argues that Scanlon Howley's *ex parte* communications with Dr. Kim violated Rule 4003.6. Mertis's Brief at 23. Mertis contends the rule embodies the public policy regarding a patient's right to privacy in the physician-patient relationship and the physician's duty of loyalty to the patient. *Id.* (citing *Marek*, 732 A.2d at 1270). Further, Mertis insists that *ex parte* communications between defense counsel and a plaintiff's treating physician create "the potential for defense counsel to improperly influence the treating physician," which is a substantial concern in this case because Scanlon Howley "manufactured an attorney-client relationship with a treating physician to control the treating physician's testimony[.]" *Id.* at 26-27. Accordingly, Mertis contends Rule 4003.6 prohibits obtaining information from a patient's treating physician without either securing the patient's written consent or utilizing the formal discovery process. *Id.* at 23-24. Mertis argues that Appellant has misinterpreted the plain language of Rule

4003.6. *Id.* at 30. Mertis notes that in *Marek*, the Superior Court read Rule 4003.6 as a broad ban on *ex parte* communication to protect the patient's privacy interest and the physician's duty of loyalty. *Id.* (citing *Marek*, 732 A.2d at 1270). As such, Mertis asserts that Rule 4003.6 is a restrictive rule.

Addressing Appellant's argument that Rule 4003.6's client exception applies because Dr. Kim became Scanlon Howley's client when he retained the firm after he received the subpoena, Mertis highlights that Scanlon Howley represented only Dr. Oh and NAPA when Mertis served the subpoena on Dr. Kim. *Id.* at 28. This timeline, in Mertis's view, means that the initial communications between Scanlon Howley and Dr. Kim, when Dr. Kim was unrepresented, violated Rule 4003.6, and Scanlon Howley's subsequent acceptance of representation of Dr. Kim cannot cure the Rule 4003.6 violation. *Id.* at 28, 30. Mertis insists that "[n]o court has ever held that Rule 4003.6 permits a law firm that represents a defendant in litigation to communicate privately with a plaintiff's non-party treating physician, let alone accept representation of the plaintiff's physician." *Id.* at 29. Mertis further stresses that Dr. Kim's medical opinions, expressed to Mertis, were adverse to Dr. Oh because Dr. Kim told Mertis that her injuries were caused by the femoral nerve block. *Id.* Additionally, Mertis reads Rule 4003.6 as unambiguously providing that "when a law firm already represents a defendant in litigation, the exception to Rule 4003.6(1) permits that law firm to have *ex parte* communications about the Plaintiff with its client[.]" *Id.* at 32. In Mertis's view, once Scanlon Howley undertook representation of Dr. Oh, Rule 4003.6 prohibited Scanlon Howley from communicating with or representing Dr. Kim. *Id.* at 33. Moreover, Mertis claims that permitting Scanlon Howley to take advantage of the client exception would render Rule 4003.6 meaningless because the firm already had a client in the case and permitting it to then represent a different treating physician to conduct discovery "is an

absurd result" that this Court did not intend. *Id.* at 33-34. For these reasons, Mertis advocates affirmance of the Superior Court's decision that defense counsel cannot undertake representation of a plaintiff's treating physician to justify *ex parte* communications with that physician. *Id.* at 29.

Refuting Appellant's accusations that the Superior Court engaged in fact-finding, Mertis claims there is evidence in the record to support the Superior Court. *Id.* at 34. Mertis notes that it is undisputed that Scanlon Howley had *ex parte* communications with Dr. Kim about the case before it represented Dr. Kim. *Id.* Specifically, Mertis explains the record reflects that Scanlon Howley admitted to advising Dr. Kim that it already represented Dr. Oh and to informing Dr. Kim of the complaint's allegations, which led to Dr. Kim executing a conflict-of-interest waiver. *Id.* In Mertis's view, these facts were the basis of the Superior Court's conclusion that allowing Scanlon Howley to represent Dr. Kim in deposition testimony, while at the same time representing Dr. Oh, is the same as having *ex parte* communication. *Id.* at 35 (citing *Mertis*, 289 A.3d at 536).

Next, Mertis argues that the trial court has the authority to determine the appropriate sanction to remedy Appellant's violation of Rule 4003.6, which may include disqualification of counsel. *Id.* Mertis claims that our Court has held that disqualification may be necessary to ensure a fair trial. *Id.* (citing *Phila. v. AFSCME*, 469 A.2d 1051 (Pa. 1983); *Slater v. Riner, Inc.*, 338 A.2d 584 (Pa. 1975)). In Mertis's view, "[i]t is simply incongruent with Pennsylvania law to contend that trial courts do not have the power to disqualify counsel in order to remedy an egregious discovery violation when trial courts are already vested with authority to dismiss a claimant's lawsuit or enter default against a defendant as a discovery sanction under [Pa.R.Civ.P.] 4019." *Id.* at 36. Because Dr. Kim allegedly has already expressed his medical opinion that the femoral nerve block caused Mertis's injuries, Mertis notes the risk that private communications between

Scanlon Howley as defense counsel and Dr. Kim may be used to influence Dr. Kim's testimony or dissuade Dr. Kim from testifying. *Id.* at 37. Further, Mertis argues the cases Appellant cited regarding courts' authority to disqualify counsel for violations of the Rules of Professional Conduct are inapt because Mertis is not relying on those rules. *Id.* at 38. Because the harm to Mertis's privacy interests cannot be undone, she contends disqualification may be an appropriate remedy.

Addressing waiver, Mertis argues her delay between learning Scanlon Howley did not "erect a conflict wall" to screen Attorney Hayes from Dr. Oh's representation and bringing the motion to disqualify was not long enough to waive her rights. *Id.* at 39-40. Mertis insists she raised her objection "immediately after confirming *ex parte* communications occurred without any conflict wall in place" and "gave Scanlon Howley six weeks to correct their violation before filing her [m]otion." *Id.* at 41. Accordingly, Mertis maintains any alleged delay is not sufficient to find waiver.

Refuting Appellant's choice of counsel argument, Mertis acknowledges that the right to counsel is absolute, but the right to a particular counsel is not absolute and must be balanced with competing interests. *Id.* at 44-45. Mertis contends that disqualifying Scanlon Howley would not violate either physician's right to counsel. *Id.* at 45. If the trial court concludes that Scanlon Howley's conduct impedes due process or fundamental fairness or violates the Rules of Professional Conduct, Mertis argues the trial court could disqualify the firm. *Id.* at 46, 48. Mertis further asserts that a violation of Rule 4003.6 may threaten due process or fundamental fairness. *Id.* at 48 (citing *Marek*, 733 A.3d at 1268 (awarding a new trial for a Rule 4003.6 violation); *Jakobi v. Ager*, 45 Pa.D.&C.4th 189, 195 (C.P. Phila. 2000) (disqualifying law firm based on a Rule 4003.6 violation)). Accordingly, Mertis agrees with the Superior Court's decision to remand for the trial court to determine an appropriate remedy for the Rule 4003.6 violation, which will allow the trial

court to "determine the information gleaned from Scanlon Howley's improper contact with Dr. Kim and fashion an appropriate remedy, which may include disqualification, mindful of the fact that *all* parties including Dr. Oh's co-defendants are entitled to a fair trial that due process requires." *Id.* at 50 (emphasis in original).

In his reply brief, Appellant maintains this case is resolved by the plain language of Rule 4003.6, which "expressly allows" Scanlon Howley's attorneys to communicate with Dr. Kim and Dr. Oh outside of the discovery process. Appellant's Reply Brief at 1. Appellant criticizes Mertis for not explaining how the Superior Court's interpretation of Rule 4003.6 is supported by the rule's plain language. *Id.* at 2. Moreover, Appellant notes that Mertis did not claim that Rule 4003.6(1) is ambiguous, and instead resorted to raising other issues, such as the timing of Dr. Kim's retention of the firm, whether one law firm can represent more than one treating physician in the same case, and the necessity of conflict walls. *Id.* at 3. Appellant insists that Mertis's public policy arguments cannot supersede the rule's plain language. *Id.* Additionally, Appellant points out that none of the cases Mertis cited involve the Rule 4003.6(1) client exception where a law firm represents two treating physicians. *Id.* at 5-6. Accordingly, Appellant maintains we should reverse the Superior Court "[b]ecause [Merits] either asks this Court to ignore the plain meaning of Rule 4003.6 or to create a rule that does not exist, in a manner that would destroy the delicate balance between patient privacy and access to information from treating physicians[.]" *Id.* at 7.

Appellant next argues that Mertis did not refute his argument that the Superior Court engaged in improper fact-finding when it found a violation of Rule 4003.6 without an evidentiary record. *Id.* at 8. Appellant reminds that the trial court found Mertis adduced no facts to show the nature or extent of Attorney Hayes's communications with Dr. Kim or of his involvement in Dr. Oh's defense. *Id.* Because there is no support in the record

for Mertis's allegation that any of the firm's attorneys engaged in substantive discussions with Dr. Kim before Dr. Kim retained the firm, Appellant maintains that we should reverse the Superior Court. *Id.* at 8.

Even if Mertis's Rule 4003.6 interpretation prevails, Appellant asserts that it does not follow that disqualification is the appropriate remedy. *Id.* at 9. Appellant reiterates his waiver argument, claiming there is no justification for the six-month delay in filing the motion for disqualification. *Id.* Further, Appellant maintains that Rule 4003.6, as a discovery rule, does not prohibit the same law firm from representing a physician-defendant and a non-party physician in the same case, nor does Rule 4003.6 include disqualification as a remedy. *Id.* at 10-11. Lastly, even though Appellant acknowledges that disqualification may be necessary to ensure a fair trial, he argues there is no evidence to support Mertis's claim that Scanlon Howley's conduct undermines her due process rights. *Id.* at 12-13. Accordingly, Appellant urges us to reverse the Superior Court based on Rule 4003.6's plain language. *Id.* at 13.

## B. DISCUSSION

Rule 4003.6 governs obtaining information from a party's treating physician and provides, as set forth above, as follows:

**Rule 4003.6. Discovery of Treating Physician**

Information may be obtained from the treating physician of a party only upon written consent of that party or through a method of discovery authorized by this chapter. This rule shall not prevent an attorney from obtaining information from

(1) the attorney's client,

(2) an employee of the attorney's client, or

(3) an ostensible employee of the attorney's client.

Pa.R.Civ.P. 4003.6.

Our Court adopted Rule 4003.6 outside of the ordinary rulemaking publication process on April 29, 1991, explaining "[w]hereas publication of proposed rulemaking would otherwise be required, it has been determined under Rule of Judicial Administration 103(a)(3) that the immediate promulgation of [Rule 4003.6] is required in the interest of justice and efficient administration," and the rule became effective on July 1, 1991. 21 Pa.B. 2337 (May 18, 1991) (*per curiam* order).

Preceding Rule 4003.6's adoption, our trial courts had disapproved of unauthorized *ex parte* contacts between defense counsel and a plaintiff's treating physician in a line of cases beginning with *Alexander v. Knight*, 25 Pa.D.&C.2d 649 (C.P. Phila. 1961), *aff'd per curiam*, 177 A.2d 142 (Pa. Super. 1962). The *Alexander* Court reasoned that a physician, who is in a confidential and fiduciary relationship to a patient, owes the patient a "duty of total care," which includes a duty to assist the patient in litigation and refuse to help the opposing party. *Alexander*, 25 Pa.D.&C.2d at 655. While the physician also "owes a duty to conscience to speak the truth; he need, however, speak only at the proper time." *Id.* Based on this, the *Alexander* Court condemned the defense representative, a physician employed by the defense to interview plaintiffs' physicians and to secure a report, for inducing the plaintiff's treating physician to breach his confidential relationship to his patient by giving a report to defense counsel without his patient's permission. *Id.* Several trial court decisions followed *Alexander*'s refusal to permit *ex parte* contact between defense counsel and the patient's treating physician, emphasizing a physician's duty of confidentiality to a patient. *See Hoffmeyer v. Pell*, 23 Pa.D.&C.3d 448, 453-54 (C.P. Somerset 1982) (denying the defense's request for an *ex parte* interview with the plaintiff's treating physician and noting that formal deposition protects the patient and the physician); *Freyer v. Travelers Indem. Co.*, 15 Pa.D.&C.3d 649, (C.P. Westmoreland 1980) (rejecting the defendant's motion to compel the plaintiff

to submit to an examination conducted by the plaintiff's treating physician due to the chilling effect on potential patients); *Nicholson v. Polcyn Estate*, 12 Pa.D.&C.3d 561, 569 (C.P. Lancaster 1979) (recognizing a cause of action against a treating physician for the unauthorized disclosure of confidential information); *Shea v. McCadden*, 46 Pa.D.&C.2d 560, 563 (C.P. Del. 1969) (denying defendants request to have the plaintiff submit to an examination conducted by the treating physician who the defendants subsequently employed due to the confidential relationship).

A federal district court, applying Pennsylvania law, predicted that our Court, "if confronted with the issue, would *at least* require reasonable notice to a plaintiff or his counsel before defense counsel may communicate with plaintiff's treating physician." *Manion v. N.P.W. Med. Ctr. of N.E. Pa., Inc.*, 676 F. Supp. 585, 595 (M.D. Pa. 1987) (emphasis in original). The district court explained that the prohibition on *ex parte* contact is rooted in the public policy of protecting the confidentiality of the physician-patient relationship, and it is distinct from the statutory physician-patient privilege in 42 Pa.C.S. § 5929. *Id.* at 593. Further, the court noted that only the patient can waive the bar on *ex parte* communications. *Id.* at 594. The court found the rationale underlying the *ex parte* communication prohibition was persuasive, stating it encourages patients to speak openly with their physicians, it provides safeguards against the discovery of irrelevant information, and it avoids the potential for improperly influencing the physician. *Id.* at 594-95 (positing that "[a]n unauthorized *ex parte* interview could disintegrate into a discussion of the impact of a jury's award upon a physician's professional reputation, the rising cost of malpractice insurance premiums, the notion that the treating physician might be the next person to be sued, and other topics which might influence the treating physician's

views."). Based on the *Alexander* line of cases, decisions from other jurisdictions,[2] and the rationale of the prohibition, the *Manion* Court held that defense counsel must provide reasonable notice to the plaintiff before contacting the treating physician. *Id.* at 595.

The analysis of the *Alexander* line of trial court decisions and *Manion*, however, was subsequently rejected in *Holtzman v. Zimmerman*, 47 Pa.D.&C.3d 608 (C.P. Cumberland 1988), and *Moses v. McWilliams*, 549 A.2d 950 (Pa. Super. 1988), *allocatur denied*, 558 A.2d 532 (Pa. 1989). In *Holtzman*, the trial court concluded there was no public policy prohibiting *ex parte* communication with a treating physician. *Holtzman*, 47 Pa.D.&C.3d at 626-27. The trial court opined that the *Alexander* line of cases "envisioned a concept of confidentiality and a fiduciary relationship between physician and patient which is not found in any statute." *Id.* Similarly, the trial court criticized *Manion* for relying "on numerous general statements of the Pennsylvania trial courts for which we find no legal precedent or Pennsylvania public policy to support." *Id.* at 626. Because the legislature had not imposed any restrictions on physicians' abilities to engage in *ex parte* communication or to serve as an expert witness for the defense, the *Holtzman* Court held that "physicians are to be treated like any other witness" absent a contrary legislative directive. *Id.* at 627.

Moreover, in *Moses*, the Superior Court found there was no cause of action for a treating physician's breach of physician-patient confidentiality based on the physician's *ex parte* communication with defense counsel in which the physician revealed information that he gained while treating the plaintiff. *Moses*, 594 A.2d at 953-54. The court found it significant that the statute codifying the physician-patient privilege, 42 Pa.C.S. § 5929, states that the privilege ceases to apply when the patient brings a civil action for personal

---

[2] *See Petrillo v. Syntex Labs., Inc.*, 499 N.E.2d 952 (Ill. App. Ct. 1986); *Stempler v. Speidell*, 495 A.2d 857 (N.J. 1985).

injuries. *Id.* at 955. Further, the court could not find any ethical considerations or medical licensing statutes that precluded disclosing confidential information after the patient files a lawsuit. *Id.* at 956. In the court's view, providing physicians immunity from liability for disclosing confidential information relevant to a malpractice claim aided in finding the truth and in disposing meritless claims at the earliest possible time. *Id.* at 958-59. Expounding on the benefits of *ex parte* interviews, the court opined that they "are less costly and easier to schedule than depositions, are conducive to candor and spontaneity, are a cost-efficient method of eliminating non-essential witnesses in a case where a plaintiff might have a number of treating physicians, and allow both parties to confer with the treating physicians." *Id.* at 959 (footnote omitted). Even though it endorsed *ex parte* interviews with treating physicians, the court noted they must be "limited to that which is pertinent and material to the underlying litigation" or they would be inadmissible at trial. *Id.* Subsequently, a federal district court applying *Holtzman* and *Moses* "reject[ed] the notion of a public policy in Pennsylvania prohibiting *ex parte* contact with treating physicians, as set forth in *Manion*." *MacDonald v. U.S.*, 767 F. Supp. 1295, 1300 (M.D. Pa. 1991).[3]

Following *Holtzman*, *Moses*, and *MacDonald*, Rule 4003.6 became effective. In the first appellate case to apply Rule 4003.6, the Superior Court in *Marek* held that a treating physician's violation of Rule 4003.6 warranted a new trial. *Marek*, 733 A.2d at 1270. There, the plaintiff's treating physician communicated with defense counsel *ex parte* in response to defense counsel's request for his impressions of the case and then testified at trial as a defense expert. *Id.* at 1269. The *Marek* Court stated Rule 4003.6 prohibited a treating physician from providing the opposing party with any information without the patient's written consent outside of the formal discovery process. *Id.* at 1270.

---

[3] The district court issued its opinion on June 28, 1991, after our Court had adopted Rule 4003.6 but before it became effective. Its opinion does not mention Rule 4003.6.

The court opined that Rule 4003.6 reflects "the recognized privacy interest underlying the physician-patient relationship and the physician's duty of loyalty to the patient." *Id.* Echoing the *Alexander* line of cases and *Manion*, the court continued that *ex parte* communication may result in inquiry into irrelevant aspects of the patient's mental or physical health or history, may implicate physicians in tort liability for breach of privacy, and may permit defense counsel to improperly influence the physician or dissuade the physician from testifying. *Id.* Even though a patient waives the physician-patient privilege by filing a lawsuit, the *Marek* Court found "this waiver does not permit unfettered disclosure," and "Rule 4003.6 regulates the manner in which defense counsel obtains information from the plaintiff's treating physician." *Id.* The court continued:

> Rule 4003.6 is clear in its directive. Only upon consent or through a method of authorized discovery may information be obtained from a party's treating physician. These procedures protect both the patient and the physician by ensuring that adverse counsel will not abuse the opportunity to contact or interrogate the physician privately. When formal discovery is undertaken in the presence of a patient's counsel it can be assured that irrelevant medical testimony will not be elicited and confidences will not be breached, preserving the trust which exists between doctor and patient.

*Id.* Because Rule 4003.6 was violated when the plaintiff's treating physician communicated *ex parte* with defense counsel without the plaintiff's consent and then testified as an expert at trial, the Superior Court awarded a new trial. *Id.*

Next, in *Alwine v. Sugar Creek Rest, Inc.*, 883 A.2d 605 (Pa. Super. 2005), the Superior Court concluded that *Marek* did not mandate a new trial when a treating physician testified at trial after communicating *ex parte* with defense counsel, which "may have been a violation of Rule 4003.6[.]" *Alwine*, 883 A.2d at 611. The *Alwine* Court distinguished *Marek* on the grounds that the treating physician in *Marek* testified as an expert witness, whereas the treating physician in *Alwine* did not offer expert or opinion

evidence. *Id.* Additionally, the *Alwine* Court found that the record did not show that the treating physician's testimony was prejudicial or affected the verdict. *Id.*

The only other appellate case to consider Rule 4003.6 was the Commonwealth Court's decision in *Pennsylvania State University v. Workers' Compensation Appeal Board (Sox)*, 83 A.3d 1081 (Pa. Cmwlth. 2013). In *Sox*, the employer argued that the exception in Rule 4003.6(2), which states the rule does not prohibit an attorney from obtaining information from an employee of the attorney's client, enabled the employer's counsel to have *ex parte* contact with the employee's treating physicians who were also employed by the employer. *Sox*, 83 A.3d at 1093. The Commonwealth Court noted that the Rules of Civil Procedure are not controlling in workers' compensation cases, but they may be persuasive. *Id.* Rejecting the employer's argument, the Commonwealth Court explained that the policy concerns in *Marek* applied, particularly "the potential for defense counsel to seek to influence improperly the physician" because the employer listed the treating physicians, its employees, as testimonial witnesses. *Id.* at 1094. Accordingly, the Commonwealth Court refused to read the exception in Rule 4003.6(2) as favoring *ex parte* communications in workers' compensation proceedings between a claimant's employer and the claimant's treating physicians where the employer also employs the treating physicians. *Id.*

With this background in mind, we consider whether Rule 4003.6(1) permits defense counsel to communicate with the plaintiff's treating physicians without the plaintiff's consent and outside the discovery process. In construing the Rules of Civil Procedure, our object is to "ascertain and effectuate the intention of the Supreme Court" by giving effect to all a rule's provisions. Pa.R.J.A. 108(a)-(b); *see also* Pa.R.Civ.P. 126(b) (stating that courts construe the Rules of Civil Procedure according to the principles in Pa.R.J.A. 104-115). "When the words of a rule are clear and free from all

ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Pa.R.J.A. 108(b). When a rule is not explicit, we consider a nonexclusive list of factors to ascertain the drafting Court's intent. Pa.R.J.A. 108(c).

Rule 4003.6 provides the general standard that "[i]nformation may be obtained from the treating physician of a party only upon written consent of that party or through a method of discovery authorized by this chapter." Pa.R.Civ.P. 4003.6. It then lists three relationships in which the rule does not prevent an attorney from obtaining information from a treating physician, *i.e.,* when a treating physician is the attorney's client or when a treating physician is an actual or ostensible employee of the attorney's client. Pa.R.Civ.P. 4003.6(1)-(3). We conclude that Rule 4003.6's plain language places a restriction on an attorney's ability to obtain information from a treating physician, except when the treating physician is the attorney's client or an actual or ostensible agent of the attorney's client. Neither party offers a different interpretation or argues that the rule is ambiguous. *Compare* Appellant's Brief at 14 (characterizing Rule 4003.6 as providing "three exceptions from the general rule that the information must be obtained through the discovery process") *with* Mertis's Brief at 23-24 (stating Rule 4003.6 provides "defense counsel may only obtain information from a plaintiff's treating physician by securing the written consent of the plaintiff or through an authorized method of discovery"). The dispute in this case is how Rule 4003.6 applies to the facts in which Scanlon Howley and Attorney Doherty Hillebrand represented the defendant-physician, Dr. Oh, and subsequently Scanlon Howley and Attorney Hayes accepted the representation of the plaintiff's nonparty treating physician, Dr. Kim.

Because Attorney Doherty Hillebrand represented Dr. Oh in this medical malpractice case, Rule 4003.6 precluded her from obtaining information from any of Mertis's treating physicians, including Dr. Kim, without obtaining Mertis's written consent

or engaging in an authorized method of discovery, except Rule 4003.6(1) allowed her to obtain information from her client, Dr. Oh, without obtaining such consent or using an authorized method of discovery. As Attorney Doherty Hillebrand was a member of the law firm Scanlon Howley, this restriction extended to all the law firm's attorneys, including Attorney Hayes. Accordingly, we conclude that at the time Dr. Kim contacted Attorney Hayes, Attorney Hayes was precluded from *ex parte* obtaining information from Dr. Kim because Attorney Hayes was associated with the law firm representing Dr. Oh. At that point, the plain language of Rule 4003.6 provides that the only means by which Attorney Hayes could have obtained information from Dr. Kim was by obtaining Mertis's written consent or by utilizing an authorized method of discovery. The client exception in Rule 4003.6(1) does not apply here because Dr. Kim was not Attorney Hayes's client at the time the rule restricted Attorney Hayes's ability to obtain information from Dr. Kim, and the rule does not provide that an attorney subject to Rule 4003.6's restriction may enter an attorney-client relationship in order to obtain information from a treating party's physician.

Moreover, under Pennsylvania law, "[c]onfidential information gained by one member of a law firm is imputable to other members of the same law firm." *Estate of Pew*, 655 A.2d 521, 545 (Pa. Super. 1994); *see also* Pa.R.P.C. 1.10. Under this principle, when Attorney Hayes obtained information from Dr. Kim, it was imputed to Attorney Doherty Hillebrand, who was prohibited from obtaining that information by Rule 4003.6. Contrary to the trial court's finding, Mertis did not need to show that Attorneys Doherty Hillebrand and Hayes actually shared information because they were attorneys in the same firm, and it is imputable. There is nothing in the record that would preclude this imputation. Accordingly, we agree with the Superior Court that permitting Scanlon Howley to represent both Dr. Oh and Dr. Kim was equivalent to *ex parte* communication

because the dual representation "give[s] the defense access to information that can only be obtained otherwise through authorized discovery[.]" *Mertis*, 289 A.3d at 536.

We do not offer an opinion on whether an effective screen[4] may serve as a defense to the imputation of confidential information. However, in this case, there is no evidence that Scanlon Howley had a screen in place.[5] In their responses in opposition to the motion to disqualify, neither Dr. Oh nor Dr. Kim pled as a response or sought to establish as a defense that there was a screen in place. To the contrary, the record reflects that Attorney Hayes appeared at a deposition of a nonparty physician witness, Dr. Singh, in place of Attorney Doherty Hillebrand. Even accepting Attorney Hayes's explanation that he appeared only to notify the participants that Attorney Doherty Hillebrand would join as soon as she became available, it nonetheless shows Scanlon Howley did not have a screen in place to keep the representation of Dr. Oh isolated from the representation of Dr. Kim. Scanlon Howley's staff did not know it was improper to contact Attorney Hayes regarding anything involving Dr. Oh's representation. Moreover, Attorney Hayes acquiesced to appearing at the deposition, which shows he was not observing any screen to keep himself isolated from any participation in Dr. Oh's representation. While we express no opinion on whether a proper screen would have permitted Attorney Hayes to obtain information from Dr. Kim without violating Rule 4003.6, we observe that the record shows Scanlon Howley did not have such a screen in place.

---

[4] The Pennsylvania Rules of Professional Conduct define "screened" as "the isolation of a lawyer from any participation in a matter through the timely imposition of procedures within a firm that are reasonably adequate under the circumstances to protect information that the isolated lawyer is obligated to protect under these Rules or other law." Pa.R.P.C. 1.0(k).

[5] Mertis filed the motion to disqualify on April 16, 2021, approximately 68 days after Attorney Hayes appeared at Dr. Singh's February 8, 2021 deposition. Dr. Oh has not argued how that specific delay prejudiced him, other than generally asserting it was for tactical purposes to have Dr. Oh's counsel disqualified. Under these circumstances, we decline to find that Mertis waived her objection to a Rule 4003.6 violation.

Ultimately, if we conclude Rule 4003.6 permits the conduct in this case, such interpretation would turn Rule 4003.6(1) into a loophole for one attorney in a law firm to represent a defendant doctor and another attorney in the same law firm to represent a plaintiff's treating physician concurrently. Such reading would undermine the rule and allow attorneys in law firms to have unrestricted access to information from the treating physician. As related to this case, there would be nothing preventing a medical malpractice insurance carrier from sending all the plaintiff-patient's treating physicians for representation to the same law firm representing a defendant physician to circumvent Rule 4003.6. When the same law firm represents the defendant treating physician and other treating physicians, the concern that one or more of the physicians may be improperly influenced or dissuaded from testifying is heightened. *See Marek*, 733 A.2d at 1270. As highlighted in *Marek*, the prohibition on *ex parte* communications protects "the recognized privacy interest underlying the physician-patient relationship and the physician's duty of loyalty to the patient," prevents the disclosure of irrelevant information about the patient's medical history, insulates physicians from potential tort liability, and guards against defense counsel attempting to improperly influence the physician or to dissuade the physician from testifying. *Id.* The concerns expressed in *Marek* are present in this case. Here, because Attorneys Doherty and Doherty Hillebrand represented a named defendant physician, Rule 4003.6 precluded them from communicating *ex parte* with any of the plaintiff's other treating physicians. Attorney Hayes, an attorney in the same law firm as Attorneys Doherty and Doherty Hillebrand, cannot obtain information from a treating physician as the rule's prohibition was imputed to all the firm's attorneys. Otherwise, attorneys in a law firm representing a defendant physician would be able to circumvent Rule 4003.6 by simply involving another of the firm's attorneys to represent a treating physician. We cannot endorse the "no restrictions" approach to Rule 4003.6(1)

that Appellant advocates because it would eviscerate the plain language restriction of Rule 4003.6 in the context of attorneys from the same law firm representing a defendant physician and a patient's treating physicians.

We decline to address Appellant's arguments that disqualification of the attorneys and law firm is not an available sanction for a Rule 4003.6 violation and would impinge on his right to choice of counsel. The issue of the proper remedy for a Rule 4003.6 violation is outside the scope of the question upon which we granted discretionary review. We granted review to interpret Rule 4003.6, not to determine the appropriate remedy for a violation of Rule 4003.6. *See Marion v. Bryn Mawr Trust Co.*, 288 A.3d 76, 93 (Pa. 2023) (declining to address an issue outside the scope of the grant of allowance of appeal). Because the Superior Court remanded to the trial court to determine the appropriate remedy, and we did not grant review regarding the remedy, it is not necessary for us to resolve whether disqualification is a permissible sanction to decide the issue upon which we granted review.

## IV.  CONCLUSION

For these reasons, we conclude that a law firm representing a defendant treating physician cannot obtain information from a nonparty treating physician without the patient's written consent or through an authorized method of discovery. The Rule 4003.6(1) client exception does not permit a law firm to obtain information from a nonparty treating physician by entering into an attorney-client relationship with that physician when the law firm's attorneys were already prohibited from obtaining information from that physician under Rule 4003.6 prior to entering such attorney-client relationship. Accordingly, the order of the Superior Court is affirmed.

Jurisdiction relinquished.

Chief Justice Todd and Justices Dougherty, Wecht and Brobson join the opinion.

Justice Donohue files a concurring opinion.